UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MISTYE L. DOUGHTY,

        Petitioner,

    v.                                      Case No. 07-C-130

ANA BOATWRIGHT,

        Respondent.

---

## DECISION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

Mistye L. Doughty ("Doughty") is in custody pursuant to a state court judgment and on February 8, 2007, she filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 17, 2007, the Honorable Charles N. Clevert, Jr., screened Doughty's petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. On October 25, 2007, this case was transferred to this court upon all parties consenting to the full jurisdiction of a magistrate judge. On December 10, 2007, the respondent answered the petition, and on February 13, 2008, Doughty filed a brief in support of her petition. The pleadings on Doughty's petition are closed and the matter is ready for resolution.

**FACTS**

On October 11, 2002, following a jury trial, Doughty was convicted of one count of felony murder related to an armed robbery, in violation of Wisconsin Statute § 940.03. (Ans. Ex. A.) Doughty was sentenced to 35 years of initial confinement and 25 years of extended supervision. (Ans. Ex. A.) Doughty appealed and on April 13, 2004, in an unpublished per curiam decision, the

court of appeals affirmed her conviction. (Ans. Ex. E.) The Wisconsin Supreme Court denied review on August 2, 2004. (Ans. Ex. H.) Doughty then filed a motion for post-conviction relief in the trial court, which was denied, and affirmed by the court of appeals on October 10, 2006. (Ans. Ex. L.) The Wisconsin Supreme Court denied review on January 9, 2007. (Ans. Ex. O.)

The following relevant facts are contained in the court of appeals' decision affirming Doughty's denial of post-conviction relief:

> This appeal arises out of the January 9, 2002 murder of Doug Tappa, a Green Bay jeweler. According to the criminal complaint, Mistye Doughty and her husband Matthew Doughty arranged a meeting at Tappa's house to discuss jewelry Matthew had previously purchased and which Matthew believed contained fake diamonds. While there, Matthew beat Tappa to death by repeatedly striking him in the head with a wrench. The two then escaped with a significant amount of jewelry.
>
> Matthew and Mistye were charged with armed robbery. Matthew was also charged with first-degree intentional homicide, and Mistye with felony murder. The two were tried separately, with Matthew's trial scheduled first. Matthew was convicted of both charges against him.
>
> Mistye's trial commenced one week later, on August 12, 2002. The State's theory of the case was that Mistye had been a part of a plan to rob Tappa from the very beginning. She needed money to support her drug habit, and was accustomed to getting money by having Matthew steal things for her. The State argued that "Mistye Doughty is not some innocent, ignorant bystander but, rather, someone who is the prime reason for this robbery and who aided and abetted it."
>
> Mistye painted a very different picture. Counsel argued Matthew was exclusively responsible for the planning of the robbery. Once in the house, Matthew killed Tappa while Mistye was in the bathroom, and she attempted to stop him but was too late. The defense argued that testimony to the contrary was not credible.
>
> One witness who contradicted the defense account was Renee Rogers. The Doughtys had moved into Rogers' home approximately three weeks before the murder. Rogers testified that prior to the murder she heard Mistye telling Matthew that it would be easy to rob Tappa. She testified Mistye would talk about the plan "on a regular basis," Mistye was "really trying to push [Matthew] to do it" and Mistye was desperate for money. Finally, Rogers noted that when Mistye and Matthew returned from Tappa's house after the murder, "[t]hey both acted as if they had won the lottery."

State v. Doughty, No. 2005AP3132 (Wis. Ct. App., October 10, 2006) (per curiam) (unpublished); (Ans. Ex. L).

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court, or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be "substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734,

3

739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

**ANALYSIS**

Doughty raises four grounds for relief: (1) trial counsel provided ineffective assistance by failing to impeach prosecution witness Renee Rogers ("Rogers"); (2) trial counsel provided ineffective assistance by failing to investigate the testimony of Renee Rogers at co-defendant's trial; (3) due to extensive media coverage, trial counsel provided ineffective assistance by failing to revisit a change of venue motion after voir dire; and (4) there was insufficient evidence to support a conviction on any of the charges. The court shall address each of these grounds in turn.

**Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his

4

attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant under the second prong, the court need not consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

Doughty has failed to exhaust her second and third grounds for relief. These issues were not raised in either Doughty's direct appeal, which focused solely upon the argument that her conviction was not supported by sufficient evidence, (see Ans. Ex. B, D, F), or in her subsequent motion for post-conviction relief, which focused upon the argument that Doughty's trial counsel was ineffective for not impeaching Rogers, (see Ans. Exs. I, K, M, N).

Ordinarily, when confronted with an unexhausted claim, a court will permit the petitioner to return to state court to exhaust his state court remedies. However, in light of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1), Doughty would be precluded from again pursuing her present petition after exhausting state remedies unless this court granted a stay in these proceedings and held Doughty's present petition in abeyance as he exhausted state court remedies. See Rhines v. Weber, 544 U.S. 269, 275 (2005). A district court should grant a stay only when a "the petitioner had good cause for [her] failure to exhaust, [her] unexhausted claims are potentially

5

meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278.

Doughty argues that her post-conviction attorney's failure to raise these issues constitutes cause that should excuse her failure to exhaust these claims. (Docket No. 13 at 3.) The court disagrees. Regardless of her attorney's alleged failures, Doughty has failed to present any reason as why she did not later exhaust her remedies in state court with respect to these claims. Further, upon evaluating Doughty's unexhausted claims, the court finds that these claims are without potential merit and therefore shall be denied pursuant to 28 U.S.C. § 2254(b)(2). Thus, the court shall proceed to address Doughty's exhausted claims upon their merits.

As for Doughty's claim that her trial counsel was ineffective for failing to impeach Rogers with her prior inconsistent statements, Doughty argues that Rogers' testimony was inconsistent between her and her co-defendant's trials. Doughty alleges that Rogers testified inconsistently between these two trials and Rogers' initial testimony was consistent with Doughty's theory of defense, i.e. that she was not aware that her husband planned to rob Doug Tappa.

In the trial of Doughty's husband and co-defendant, Rogers testified that she recalled hearing Matthew Doughty discuss robbing Doug Tappa in early-January while in the living room and kitchen of the house they all shared. (Ans. Ex. I at 9-10.) Matthew Doughty made these comments in the presence of Mistye Doughty and in the context of Mistye Doughty complaining that the couple did not have any money. (Ans. Ex. I at 9-10.)

A week later, at Mistye Doughty's trial, Rogers testified that while all three were together in the house in early-January, Mistye Doughty told her husband that it would be easy to rob Doug Tappa because there were no cameras, the jewelry was accessible, and it would be easy to escape. (Ans. Ex. I at 7-9.) Mistye Doughty made these statements in the context of complaining to her husband that the couple needed money. (Ans. Ex. I at 8-9.)

6

The court of appeals held that "Rogers' testimony was largely consistent, and to the extent that it was inconsistent, trial counsel did in fact cross-examine Rogers about the inconsistency." (Ans. Ex. L at ¶13.) The court continued:

> The record simply does not support [the assertion that Rogers claimed it was Matthew's idea to rob Tappa in Matthew's trial, then turned around and claimed it was Mistye's idea to rob Tappa in Mistye's trial one week later]. Rogers never testified in Mistye's trial that Mistye conceived the idea of robbing Tappa. Rogers only testified that Mistye told Matthew it would be easy to rob Tappa. One inference from this testimony is that Mistye conceived the plan, but a more reasonable inference is that Rogers overheard Mistye encouraging Matthew after the plan had already been hatched – something Rogers testified in both trials that Mistye did. As for Rogers' testimony in Matthew's trial, Rogers stated Matthew started talking about robbing Tappa after Mistye insisted that Matthew get them some money. But again, this statement does not indicate which Doughty originated the plan. It simply indicates Matthew's motive for the crime.
>
> As the State points out, this inconsistency is at most one of emphasis. That is, at Matthew's trial, Rogers primarily discussed statements Matthew made. At Mistye's trial, Rogers primarily discussed statements Mistye made. However, counsel fully explored that inconsistency:
>
>> Q: And isn't it true that it was Matthew Doughty, at least according to you in your testimony in his trial, was the one that was talking about robbing Mr. Tappa?
>>
>> A: Yeah, he talked about it. Mistye is the one that initially brought it up and the one that kept hounding, "when are you going to do it?"
>>
>> Q: When did that – when did that occur?
>>
>> A: All the time.
>>
>> Q: Mistye hounding Matthew?
>>
>> A: On a regular basis until it was done.
>
> We conclude that to the extent Rogers' testimony was inconsistent, Mistye's trial counsel fully explored the inconsistency. Counsel's performance therefore was not deficient, and Mistye's claim is without merit.

(Ans. Ex. L at ¶¶15-17).

Having reviewed the transcript of Rogers' testimony in Doughty's trial, (Ans. Ex. S at 392-440), and Rogers' testimony in the trial of Matthew Doughty, (Ans. Ex. I at 101-35) that have been

7

included in the record (the court has not been provided with a complete transcript of Rogers' testimony in Matthew Doughty's trial), the court is unable to conclude that the court of appeals' decision regarding this issue was an clearly contrary to or an unreasonable application of the Strickland precedent.

Where Rogers' testimony was materially inconsistent with the testimony that she gave in the earlier trial, Doughty's attorney took care to point out and emphasize these facts. For example, Doughty's attorney began his cross-examination of Rogers by emphasizing that Rogers testified falsely in the prior trial when she stated that she had never been convicted of a crime. (Ans. Ex. S at 421.) However, with respect to Doughty's alleged inconsistencies regarding Roger's testimony regarding which of the Doughtys allegedly initiated the idea of robbing Doug Tappa, Rogers' testimony is not materially inconsistent. Rather, as the court of appeals noted, any "inconsistency is at most one of emphasis. That is, at Matthew's trial, Rogers primarily discussed statements Matthew made. At Mistye's trial, Rogers primarily discussed statements Mistye made." (Ans. Ex. L. at ¶16.) Because the court finds that there were not any material inconsistencies in Rogers' testimony between the two trials, Doughty's attorney's performance was not unreasonable and could not have been prejudicial. Therefore, the court must deny Doughty's ineffective assistance of counsel claim.

**Sufficiency of the Evidence**

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 US 358, 364 (1970)). "A federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court." Id. at 318.

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly

8

instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 318-19 (internal citations, quotation marks, and footnote omitted).

Doughty alleges that there was insufficient evidence to convict her of the crime of armed robbery, and therefore, as a matter of law, she could not be convicted of felony murder. (Ans. Ex. B at 6.) Doughty emphasized in her brief to the court of appeals that her husband testified that the couple went to see Doug Tappa because of a dispute over some jewelry and did not intend to rob him. (Ans. Ex. B at 7.) Although Rogers testified that Doughty discussed how easy it would be to rob Doug Tappa, Rogers never testified that Doughty had agreed to help commit a robbery. (Ans. Ex. B at 7.) No witness for the State testified that Doughty participated in or aided or abetted it. (Ans. Ex. B at 7.)

The court of appeals discussed this issue at length in its unpublished per curiam decision denying Doughty's initial appeal:

> Although he was called by the State, Matthew's testimony was favorable to Mistye. He testified that Mistye did not take part in the planning or commission of the armed robbery. Rather, they went to the Tappa residence to discuss some fake diamonds discovered in jewelry they had previously purchased from Tappa. They had no intention of robbing him. While Mistye was using Tappa's bathroom, Matthew got in an argument with Tappa, picked up a wrench from a countertop and inflicted several blows to Tappa's head. When Mistye returned from the bathroom, she tried to stop Matthew from hitting Tappa, but he threatened her and she ran out to the car. Matthew then took the jewelry as a crime of opportunity. He testified that Mistye was crying when he returned to the car and would not touch any of the briefcases or jewelry.
>
> Mistye's argument that the State failed to prove her complicity in the armed robbery depends entirely on Matthew's testimony. The jury was not required to believe Matthew's account of the incident. See State v. Berg, 116 Wis. 2d 360, 365-66, 342 N.W.2d 258 (Ct. App. 1983). Matthew's testimony was inconsistent with the testimony of other witnesses and with physical evidence.

9
Case 2:07-cv-00130-AEG   Filed 12/09/08   Page 9 of 11   Document 14

Renee Rogers, a friend with whom they had been staying, testified that Mistye spoke of robbing Tappa weeks before the incident. Rogers testified that Mistye was the more aggressive one, constantly pushing Matthew to rob Tappa to support her drug habit. Mistye knew Tappa and had been to his house before, stating that it would be easy to rob him because there were no cameras. Matthew's version of the incident as recited to Rogers after the murder, which the jury could also reject in whole or in part, described a plan for Mistye to steal jewelry while Matthew "distracted" Tappa. Matthew told Rogers that he struck Tappa when Mistye took too long to do what she was supposed to do, suggesting that she was in the room when the assault began. Rogers testified Mistye also assisted Matthew in disposing of his bloody clothes and the murder weapon. Mistye started trying on the jewelry and acted like she "won the lottery."

The jury could also reasonably disbelieve Matthew's testimony that he picked up the wrench from Tappa's countertop. A wrench comparable to the murder weapon was missing from a set Matthew owned. The jury could reasonably infer that he took the wrench with him to use as a weapon while robbing Tappa. Matthew's testimony that he made an appointment to discuss the fake diamonds a week earlier was contradicted by his later testimony that he did not find out about the fake diamonds until the morning of the murder. Matthew's testimony that Mistye was upset and would not touch the jewelry was contradicted by Rogers' testimony and physical evidence. Mistye's fingerprint was found on a jewelry box that, according to Matthew, she did not touch. Based on all of these inconsistencies, the jury could reasonably discount some or all of Matthew's testimony.

Without utilizing Matthew's testimony, the jury could reasonably find beyond a reasonable doubt that Mistye was fully complicit in the armed robbery. She conspired with Matthew to commit the crime and aided and abetted him during and after the crime. When reviewing the sufficiency of the evidence, we must construe the evidence in the light most favorable to the verdict and allow the jury to draw reasonable inferences from the evidence. See State v. Poellinger, 153 Wis. 2d 493, 501, 451 N.W.2d 752, (1990); Bautista v. State, 53 Wis. 2d 218, 223, 191 N.W.2d 725 (1971).

The jury could believe that Mistye and Matthew planned the crime together, went armed from Rogers' home to Tappa's residence, killed Tappa, took his jewelry, left together, destroyed evidence together and approximately equally split the proceeds. Without the benefit of Matthew's favorable testimony, the record contains no evidence that Mistye withdrew from the conspiracy, attempted to stop Matthew while he was hitting Tappa, disapproved of his crime or was upset by his actions. Rather, her statements before the robbery and her attitude, assistance in destroying the evidence and sharing the proceeds after the robbery support the inference that she was a party to the armed robbery and murder.

Mistye's argument that she withdrew from the conspiracy fails for several reasons. First, other than Matthew's testimony which the jury was not required to believe, there is no evidence of withdrawal. In addition, the jury could reasonably find that Mistye was an aider and abetter, not merely a co-conspirator. Withdrawal is only a

> defense to conspiracy, not to aiding and abetting.  <u>See</u> Wis. Stat. § 939.05(2) (2001-02).  Finally, even Matthew's testimony does not show timely withdrawal from a conspiracy.  A perpetrator withdrawing from a conspiracy must notify the other conspirators within a reasonable time before the crime is committed.  <u>See</u> <u>Bergeron v. State</u>, 85 Wis. 2d 595, 609, 271 N.W.2d 386 (1978).  Attempting to stop Matthew after he had already inflicted several blows to Tappa's head does not constitute timely withdrawal from the conspiracy to rob Tappa.

(Ans. Ex. E, ¶¶3-9.)

This court finds that there was ample evidence to support Doughty's conviction and agrees with the thorough analysis set forth in the decision of the court of appeals. Therefore, upon having independently reviewed the transcript of Doughty's trial, this court is unable to conclude that the court of appeals' decision regarding this claim was contrary to or an unreasonable application of a clearly established federal law as determined by the United States Supreme Court. A reasonable jury could conclude that the Doughtys both planned to rob Doug Tappa and that Mistye Doughty either aided or abetted the crime of robbery or conspired to commit the crime of robbery and did not sufficiently withdraw from the conspiracy. Thus, Doughty's petition must be denied.

**IT IS THEREFORE ORDERED** that Doughty's petition for a writ of habeas corpus is **denied**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this <u>9th</u> day of December, 2008.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
